Chief Judge Cooke
(dissenting in part). I respectfully dissent in part.
I would affirm the judgment of conviction and sentence imposed. There is no disagreement with the proposition *92 that defendant’s guilt was established beyond a reasonable doubt in a trial free of reversible error. I cannot agree, however, that section 60.06 of the Penal Law, entitled “Authorized disposition; murder in the first degree,” is unconstitutional.
As recognized in the other writings, we must approach the constitutional issue with an acceptance that the State statute in question carries with it a strong presumption of constitutionality, that it should be stricken as unconstitutional only as a last resort, and that courts may not substitute their judgment for that of the Legislature as to . the wisdom and expediency of the legislation (People v Davis, 43 NY2d 17, 30, cert den 435 US 998). Furthermore, the question of constitutionality is a legal issue separate and apart from the topic of whether the statute, granted it is constitutional, is wise or advisable, which is a legislative responsibility (id., at p 23).
New York’s provisions for the death penalty set forth in sections 60.06 and 125.27 of the Penal Law are to be read together (see People v Davis, 43 NY2d 17, 29, supra). Section 60.06 of the Penal Law provides that “[w]hen a person is convicted of murder in the first degree as defined in section 125.27, the court shall sentence the defendant to death.” The relevant components of the first-degree-murder statute (Penal Law, § 125.27) provide: “A person is guilty of murder in the first degree when: 1. With intent to cause the death of another person, he causes the death of such person; and (a) * * * (iii) at the time of the commission of the crime, the defendant was confined in a state correctional institution * * * upon a sentence for an indeterminate term the minimum of which was at least fifteen years and the maximum of which was natural life * * * and (b) [the] defendant was more than eighteen years old at the time of the commission of the crime.” Certain affirmative defenses, further limiting the scope of the category for conviction of first-degree murder, are listed in subdivision 2 of the section.
It is clear that a majority of the Supreme Court now hold that, generally, a death penalty statute, to be constitutional, must permit consideration of, “‘as a mitigating factor, any aspect of a defendant’s character or record and *93 any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death’ ” (Eddings v Oklahoma, 455 US 104,110, quoting Lockett v Ohio, 438 US 586, 604 [emphasis in original]).
There is a legitimate exception to this general rule, which is embodied in the New York statute. As set forth by Judge Simons, the Supreme Court plurality in Woodson v North Carolina (428 US 280) referred to “an extremely narrow category of homicide, such as murder by a prisoner serving a life sentence, defined in large part in terms of the character or record of the offender” (at p 287, n 7). Although the death sentences imposed there were set aside, the plurality was careful to point out that no opinion was expressed regarding the constitutionality of a mandatory death penalty statute limited to such a narrow category of homicide (id.). Such a reservation was also noted in Lockett v Ohio (438 US 586,604, n 11 [1978], supra), and in Roberts (Harry) v Louisiana (431 US 633, 637, n 5 [1977]). In Roberts (Stanislaus) v Louisiana (428 US 325 [1976]), the plurality observed that “a prisoner serving a life sentence presents a unique problem that may justify such a law” (at p 334, n 9; see, also, Woodson v North Carolina, 428 US 280, 292, n 25 [1976], supra; Gregg v Georgia, 428 US 153, 186 [1976]; and People v Davis, 43 NY2d 17, 34, n 3, and at p 43 [Breitel, Ch. J., dissenting], supra.).
Capital punishment is an extreme sanction. As Judge Simons notes, it has been declared as “suitable to the most extreme of crimes” (see Gregg v Georgia, 428 US 153, 187, supra). “The value of capital punishment as a deterrent of crime is a complex factual issue the resolution of which properly rests” with the Legislature, which can evaluate the results of statistical studies in terms of conditions prevalent in the State and with a flexibility of approach that is not available to the courts (id., at p 186). The further presumption, that the Legislature has investigated for and found facts necessary to support the legislation (I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269), should not be disregarded. Courts should not substitute their social beliefs and values for those of the Legislature (Ferguson v Skrupa, 372 US 726, 730). There should be and need be no such substitution here.
*94 It cannot be said that there is no rationale to justify the Legislature’s imposition of the extreme sanction where a defendant intended to cause the death of a person and did cause the death of that person, where at the time of commission defendant was over 18 years of age, and where he or she was confined in a State correctional institution serving a sentence for an indeterminate term the minimum of which was at least 15 years and the maximum of which was life (Penal Law, § 125.27, subd 1, par [a], cl [iii]).* The need for discipline in our State correctional institutions is urgent and obvious. The legislative prerogative and prescription of a deterrent limited to this “narrow category” in question, as further circumscribed by the statutory defenses, is compatible with the absolute necessity for order in State correctional institutions. At least, the Legislature could so find.
Although I arrive at the same result, I do not join in the dissent of Judge Simons, however, because one of its bases takes root in the affirmative defenses recited in the Penal Law. These are defenses, not mitigating circumstances. This court has already pointed out the difference: such defenses “relate to guilt or innocence whereas a mitigating factor may be of no significance to a determination of criminal culpability”, and “statutory defenses alone do not take the place of a distinct consideration of mitigating factors” (People v Davis, 43 NY2d 17, 34, supra). “[W]hile there may be some visual or empirical satisfaction derived from counting and generally comparing the New York defenses with the mitigating factors indorsed by the Supreme Court, the fact is that these defenses do not require consideration of the character and record of the individual in respect to his sentence or punishment * * * New York’s law does not permit a jury which has rejected these defenses and has found a defendant guilty of murder in the first degree to then mitigate the punishment by resurrecting the defenses” {id., at pp 35, 36). For affirmance, we cannot rely on a statutory provision for mitigating circumstances, because there is none, and so, in that respect, the *95 statute does not comply with the general rule enunciated by the Supreme Court (see Eddings v Oklahoma, 455 US 104, 110, supra; Lockett v Ohio, 438 US 586, 604, supra). This case, however, falls under an exception to that general rule as provided in the specified New York statute.
Judges Jones, Wachtler and Meyer concur with Judge Kaye; Judge Simons dissents in part and votes to affirm in a separate opinion in which Judge Jasen concurs; and Chief Judge Cooke dissents in part and votes to affirm in another dissenting opinion.
Judgment modified and case remitted to Supreme Court, Dutchess County, for resentencing in accordance with the opinion herein and, as so modified, affirmed.

 As noted in the majority writing, defendant had been sentenced to three consecutive sentences of 25 years to life, once for kidnapping and twice for murder (see People v Smith, 59 NY2d 156, 160, 162, 163) imposed under former section 70.30 of the Penal Law. These sentences merged into a single 25-year-to-life term.